**NOTICE:  SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Detention of:<br><br>DERWIN LERON PASLEY,<br><br>                      Petitioner. | No. 56944-2-II<br><br>PUBLISHED OPINION |

VELJACIC, J. — Derwin Leron Pasley appeals the trial court's findings of fact and conclusions of law that he is a sexually violent predator (SVP). Pasley challenges the sufficiency of the evidence that he committed a recent overt act (ROA). He also challenges the pretrial exclusion of a portion of his testimony as hearsay and claims his counsel was ineffective for failing to re-raise this issue during the trial.

We hold that sufficient evidence supports the trial court's findings and conclusions that Pasley committed an ROA. We also hold that the trial court erred in excluding evidence as hearsay, but the error was not prejudicial and does not merit reversal. Finally, we hold that Pasley's ineffective assistance claim fails because counsel's decision to refrain from objecting to the exclusion of hearsay evidence did not prejudice him. Accordingly, we affirm.[1]

---

[1] The State also pursues a cross appeal in the alternative should we not affirm the trial court proceeding. Because we affirm, we do not reach the State's alternative arguments.

56944-2-II

FACTS

I.      BACKGROUND

Pasley has a long history of sexually assaulting teenage boys. In 2010, Pasley pleaded guilty to three counts of child molestation for offenses against three separate victims between the ages of 12 and 14. The trial court imposed an exceptional sentence of 150 months of incarceration, followed by 36 months of community custody.

While Pasley was incarcerated, he entered sex offender treatment. Then, when he was released into community custody in 2018, he began treatment with Sharese Jones, a psychologist specializing in cognitive and dialectical behavioral therapy for sex offenders.

In 2020, 18-year-old K.R. reported that Pasley had sexually assaulted him. Pursuant to these allegations, Pasley entered a *Barr* plea[2] to two counts of assault in the third degree—negligence. In his plea statement, Pasley agreed that he "did intentionally touch [K.R.] in an offensive manner," but he otherwise maintained that their encounter was consensual. Clerk's Papers (CP) at 209. Pasley remained incarcerated on these offenses until March 2021, when the State filed a petition to commit him as an SVP.

Prior to trial, the State filed a motion asking the court to determine as a matter of law that Pasley's acts underlying his 2020 assault convictions against K.R. constituted an ROA. The State argued that this determination is one for the court pretrial as a matter of law. The trial court denied the motion, determining there was insufficient evidence to support a pretrial ROA ruling. The court reasoned in part that because the ROA offenses stemmed from a *Barr* plea, it could not rely

---

[2] A *Barr* plea refers to *In re Pers. Restraint of Barr*, 102 Wn.2d 265, 270-71, 684 P.2d 712 (1984), that explained a defendant may plead guilty to amended charges for which there is no factual basis with the understanding that a factual basis exists for the original charges and, if the case had proceeded to trial, there exists sufficient evidence for a trier of fact to have found the defendant guilty of the initial charges.

on the factual basis of the plea. The court also denied the State's motion for reconsideration as to this issue. As a result of the trial court's ruling, the State was required to prove beyond a reasonable doubt that Pasley committed an ROA.

II.     TRIAL TESTIMONY

The State presented testimony from Pasley; P.D. (a victim of Pasley's prior offenses); Detective Howard Reynolds, who investigated Pasley's 2020 offenses against K.R.; and expert witness, Erik Fox, Ph.D. Pasley presented testimony from two witnesses: expert witness, Brian Abbott, Ph.D.; and Pasley's former sex offender treatment provider, Sharese Jones.

A.     Pasley's Testimony

Pasley testified about his record of offenses against minors. In 1994, he worked as an after school program counselor at a YMCA in Florida, where his employment ended due to an arrest based on allegations that he molested a six-year-old boy in the program.

In 2002, he was volunteering for a church where he met 13-year-old V.S., who was also a member of the church. Pasley admitted he touched V.S.'s penis over his clothing on three or four occasions. Pasley reported that he had known V.S. for two or three months before the first incident occurred. Pasley ultimately pleaded guilty to child molestation in the second degree for his assault of V.S.

Pasley also testified about the sex offenses that occurred when he was a volunteer football coach for 12- to 14-year-old boys. One of the players, J.S., would at times drive home with Pasley. On one of these drives, Pasley pulled J.S.'s penis out of his pants and groped him. Pasley also removed his own penis from his pants, coerced J.S. into touching it, and attempted to convince J.S. to perform oral sex on him. Pasley pleaded guilty to child molestation in the third degree for this offense.

56944-2-II

Another victim from the football team, P.D., had spent the night at Pasley's home multiple times when his mother was out of town. Pasley denied touching P.D. but he did plead guilty to child molestation in the second degree for the offense against P.D.

Pasley also testified about the assault of K.R. He explained that K.R. was friends with his nephew, and that they had met on a Special Olympics basketball team. K.R. was staying at Pasley's house to watch the Super Bowl. Pasley testified that he decided to approach K.R. about sex because he believed K.R. acted in a way that was conducive to a "fluid lifestyle." CP at 642. In describing their first sexual encounter, Pasley explained that they fondled each other's penises over and under clothing for about five-to-ten minutes until Pasley had to go to work. Pasley maintained that he believed K.R. consented to this activity.

The second time Pasley approached K.R., K.R. was speaking to his girlfriend on the phone. When Pasley asked him "what's up between us," K.R. responded that it was "cool" because she did not live in Washington. CP at 652. During this interaction, Pasley and K.R. mutually masturbated each other for five minutes. Pasley says that afterwards, he noticed K.R. looking "distraught" and crying, but when he asked K.R. about it, K.R. said he was "good." CP at 654. Later that evening, Pasley awoke to the sound of his house alarm going off and realized that K.R. had left via the front door.

Pasley admitted the offenses against V.S. and J.S., denied the offense against P.D., and maintained the encounter with K.R. was consensual.

The trial court ultimately decided to exclude the portion of Pasley's deposition transcript wherein he recounted K.R.'s statement that their sexual encounter was "cool," even though K.R. had a girlfriend. The court ruled:

4

56944-2-II

> With regard to the contested designation on page 101, lines seven through 19, the court finds that this question and answer and specifically the answer, of course, is a hearsay statement. At this point the court finds that it is not relevant and therefore the court is not allowing that designation. I am unclear as to if it were not offered for the truth of the matter asserted how it would be relevant to a contested issue in this trial, and that is the court's ruling without further development of authorities and argument.

Rep. of Proc. (RP) (Mar. 18, 2022) at 13-14.

Defense counsel then asked, "what I'm hearing from the court is if we develop that further at trial, then the court could rule on that as it's presented[?]," and the court confirmed, "All pretrial rulings are subject to being re-raised and brought up and addressed on the record." RP (Mar. 18, 2022) at 14. Defense counsel did not re-raise the issue at trial, so the trial court admitted the version of Pasley's deposition without the statement at issue.

### B. Detective Reynolds's Testimony

Reynolds works with the Thurston County Sherriff's Office and investigated the incident involving K.R. He described K.R. as appearing to be a boy of 13- or 14-years-old because of his slight build, his braces, and his timid demeanor. Reynolds recommended that K.R. be interviewed by a facility that specializes in interviewing children and people with disabilities. This was because Reynolds noticed that K.R.'s vocabulary was limited and he seemed confused when asked certain questions. He also noted that K.R. lived in his mother's home and a father was never identified.

### C. Dr. Fox's Testimony

Dr. Fox testified as the State's forensic expert at trial. Based on interviews with Pasley and review of over 5,000 pages of discovery documents, Dr. Fox testified that he diagnosed Pasley with two disorders: (1) other specified paraphilic disorder with specifier of deviant interest in pubescent aged males and (2) other specified personality disorder with antisocial and narcissistic features.

5

After evaluating Pasley's prior offenses, Dr. Fox concluded that the incident with K.R. fits within the pattern of his other victims. This is because K.R. looks like a teenager and has cognitive limitations. Dr. Fox also explained that Pasley's sexual conduct with K.R. supports the paraphilic disorder diagnosis for these same reasons.

In terms of the personality disorder, Dr. Fox explained that the diagnosis was supported by Pasley's impulsive behavior, disregard for the rights of others, violation of social norms, lack of remorse, deceitfulness, lack of empathy, entitlement, and interpersonal exploitation. This disorder was evidenced by the type of victims Pasley pursued, who were "particularly vulnerable, . . . young, shy, emotionally immature individuals who lacked a father figure in the home." RP (Apr. 18, 2022) at 132. Pasley "knew their vulnerabilities and found those vulnerabilities to be specifically sexually arousing. And he had described his arousal to the power that he had over them and specifically had identified their embarrassment as part of his decision-making in choosing them." RP (Apr. 18, 2022) at 132.

Finally, Dr. Fox testified as to the risk assessment he conducted of Pasley. Based on this assessment, Dr. Fox concluded that Pasley's disorders would make it very difficult for him to control his sexual behavior, and he would be likely to engage in more predatory acts if not confined to a facility.

D.      Dr. Abbott's Testimony

Dr. Abbott testified as Pasley's forensic expert and largely disagreed with portions of Dr. Fox's testimony. Specifically, Dr. Abbott did not agree with Dr. Fox's diagnoses of Pasley, and opined that Pasley offended because he "was struggling with homosexual inclinations." 1 RP at 370. Dr. Abbott did not think that Pasley suffered from any paraphilic or personality disorder.

6

56944-2-II

Dr. Abbott concluded that the incident with K.R. was dissimilar from the offenses involving minors. He disagreed with Dr. Fox that K.R. was cognitively delayed. He testified that K.R. was able to communicate clearly and understand complex terms, and that he demonstrated life skills typical of a young adult. Dr. Abbott believed that Pasley has made progress in his treatment and that Pasley's risk of re-offense decreased after his offense against K.R.

E.      Sharese Jones's Testimony

Jones also testified for the defense. Jones was Pasley's sex offender treatment provider when he was released into community custody in 2018. She believed Pasley to have made substantial progress in treatment, noting that he completed the program successfully and had no formal violations while in the program.

However, Jones testified that some of Pasley's behaviors were concerning. Pasley described to her a sexual encounter he had during treatment which Jones believed reflected his problems with impulsivity. Jones observed Pasley concentrating on the men who looked younger in group treatment. Jones was also concerned that Pasley was being manipulative and not completely forthcoming when he was in the treatment program.

III.     TRIAL COURT'S FINDINGS

The trial court found that the State proved beyond a reasonable doubt that Pasley met the criteria as an SVP and his acts against K.R. constituted an ROA. The court ordered Pasley committed to the custody of the Department of Social and Health Services.

Pasley appeals the trial court's findings, conclusions, and order of commitment. Specifically, Pasley challenges whether the State presented sufficient evidence that Pasley committed an ROA and the trial court's decision to exclude a portion of his deposition as hearsay.

Pasley also claims that his attorney's failure to object to the trial court's hearsay ruling amounts to ineffective assistance of counsel.

ANALYSIS

I.      ROA REQUIREMENT FOR SVP PETITIONS

Pasley argues that the evidence was insufficient to prove he committed an ROA. We disagree.

A.      Standard of Review

The quantum of the evidence in SVP commitment hearings is examined under a criminal standard. *In re Det. of Thorell*, 149 Wn.2d 724, 744, 72 P.3d 708 (2003). At the initial hearing, the State must prove beyond a reasonable doubt that the person has been convicted of a sexually violent offense and suffers from an abnormality or disorder that makes them likely to engage in predatory acts of sexual violence if not confined. *Id*.

Because the legislature has adopted the beyond a reasonable doubt standard for commitments under the Sexually Violent Predator Act (SVPA), our courts have previously reasoned that sufficiency of the evidence is the appropriate standard in an SVP evidentiary challenge on appeal. *Id*.; *In re Det. of Ross*, 102 Wn. App. 108, 119, 6 P.3d 625 (2000), *abrogated on other grounds by In re Det. of Thorell*, 149 Wn.2d at 753. Under this approach, the evidence is sufficient if, when viewed in the light most favorable to the State, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Randhawa*, 133 Wn.2d 67, 73, 941 P.2d 661 (1997). Credibility determinations are for the trier of fact and are not subject to review. *State v. Cardenas-Flores*, 189 Wn.2d 243, 266, 401 P.3d 19 (2017).

56944-2-II

      B.       Legal Principles

RCW 71.09.020(19) describes an SVP as one who "suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." Under RCW 71.09.030(1),[3] the State may file an SVP petition when it appears that "a person who at any time previously has been convicted of a sexually violent offense is about to be released from total confinement" or against a "person who at any time previously has been convicted of a sexually violent offense and *has since been released from total confinement*." S*tate v. McNutt*, 124 Wn. App. 344, 347, 101 P.3d 422 (2004); *In re Det. of Albrecht*, 147 Wn.2d 1, 7-8, 51 P.3d 73 (2002).[4]

Due process requires the indefinite detention of SVPs be based on findings of current mental illness and present dangerousness. *Albrecht*, 147 Wn.2d 7-8. To prove present dangerousness, the State may be required to prove beyond a reasonable doubt that the subject of the petition has committed an ROA. RCW 71.09.060(1). An ROA can be either an act or a threat that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm. *Albrecht*, 147 Wn.2d at 8; RCW 71.09.020(13). The State is required to prove an ROA if, in between the incarceration for the qualifying offense and the filing of the petition, the offender has been released into the community. *Albrecht*, 147 Wn.2d at 8-11.

However, the State need not prove an ROA "'[w]hen, on the day [the SVP] petition is filed, an individual is incarcerated for a sexually violent offense, . . . or for an act that would itself qualify

---

[3] RCW 71.09.030 was amended in 2023. Since the amendments do not affect our analysis, we use the current version.

[4] *McNutt* (2004) and *Albrecht* (2002), use language from the 2009 version of the statute. The subject language did not change when the statute was amended in 2023; the amendment does not impact our analysis.

9

as [an ROA].'" *In re Det. of Marshall*, 156 Wn.2d 150, 157, 125 P.3d 111 (2005) (quoting *In re Det. of Henrickson*, 140 Wn.2d 686, 695, 2 P.3d 473 (2000)). Instead, "where the individual is incarcerated on the day the petition is filed, the question is whether the confinement is for a sexually violent act or an act that itself qualifies as [an ROA]." *Id*. at 158; *McNutt*, 124 Wn. App. at 350. The inquiry for whether an individual is incarcerated for an act that qualifies as an ROA is a mixed question of law and fact for the trial court, not the jury. *Marshall*, 156 Wn.2d at 158; *McNutt*, 124 Wn. App. at 350. The factual inquiry determines the factual circumstances of the individual's history and mental condition, and the legal inquiry determines whether an objective person knowing those factual circumstances would have a reasonable apprehension of harm of a sexually violent nature resulting from the act in question. *McNutt*, 124 Wn. App. at 350.

The determination as to whether an act qualifies as an ROA is fact specific. In *Marshall*, the defendant appealed the trial court's finding that he was an SVP. 156 Wn.2d at 154. The defendant had a history of sex offenses for sexual contact with minors, but when the SVP petition was filed he was incarcerated for rape in the third degree of a developmentally delayed adult. *Id*. at 154. The defendant argued that the State should have been required to prove an ROA because at the time the petition was filed, he was not incarcerated for a sexually violent offense. *Id*. at 156. The court looked to the nature of the offense, the defendant's history of offenses, and the defendant's mental condition. *Id*. at 159. The court held that the crime for which the defendant was incarcerated was an ROA because, in light of the defendant's history and mental condition, nonconsensual sex with a developmentally disabled adult would create a reasonable apprehension of harm of a sexually violent nature in the mind of an objective person. *Id*. So, while the offense was not per se sexually violent, it was an ROA based on the facts and circumstances specific to the defendant.

10

The ROA behavior need not be identical to past offending behavior to qualify as an ROA. *See McNutt*, 124 Wn. App. at 351-52. In *McNutt*, the defendant's conviction for communicating with a minor for immoral purposes constituted an ROA such that the State was not required to prove an ROA to support the SVP petition. 124 Wn. App. at 346, 351-52. The defendant's ROA offense involved the same type of predatory behavior with a minor female victim as his past behavior with minor male victims. *Id*. at 351. The court held that this still constituted an ROA in that it could create a reasonable apprehension of harm of a sexually violent nature in the mind of an objective person who knew the defendant's history and mental condition. *Id*. at 351-52. This determination was, like in *Marshall*, highly fact specific as to the defendant's history. *See id*. The court also acknowledged that it was possible for a factual scenario to exist in which someone with a sexually violent history can commit the act of communicating with a minor for immoral purposes without also committing an ROA, but the court concluded that McNutt was not that person. *Id*. at 352.

In *In re Detention of Anderson*, the State petitioned to commit a convicted sex offender as an SVP who engaged in numerous sexual liaisons with vulnerable and developmentally disabled co-patients at Western State Hospital (WSH). 166 Wn.2d 543, 545, 211 P.3d 994 (2009). At least three of the victims were incapable of consent. *Id*. at 547. The court held that Anderson's sexual activities at WSH could constitute overt acts. *Id*. at 550. Based on expert testimony, the trial court found that Anderson "engaged in sexual activity with vulnerable patients as substitutes for his preferred victims, children," and that "Anderson's acts of exploiting vulnerable adults were closely akin to his assaults on children." *Id*. Expert witnesses who were familiar with Anderson's history and mental condition believed that he posed a clear risk to reoffend if released from custody. *Id*. The court reasoned that those expert opinions support a reasonable apprehension of sexually

11

violent harm, and therefore by definition, Anderson's sexual activities for which he was incarcerated when the State filed the SVP petition could constitute overt acts. *Id*.

In *In re Detention of Froats*, the defendant appealed the trial court's finding that he was an SVP. 134 Wn. App. 420, 429, 140 P.3d 622 (2006). The defendant argued that the incident in question did not rise to the level of an ROA because his victim was an adult and did not fit his usual victim profile: children. *Id*. at 435. The court determined that this argument was not supported, and that an ROA did not need to cause reasonable apprehension of harm in the intended victim. *Id*. at 436. Rather, the court reasoned that the question is "whether an objective person familiar with the person's mental health and offense history would *reasonably fear harm*. The act or threat itself need not be dangerous." *Id.* (emphasis added). The test is whether the defendant's behavior would instill reasonable apprehension in an objective person aware of his history and condition. *Id*. at 437.

C.      The State Presented Sufficient Evidence that Pasley Committed an ROA

A rational trier of fact could have found that the State proved an ROA beyond a reasonable doubt based on the evidence presented at trial. This evidence supported a finding that Pasley's acts with K.R. create a reasonable apprehension of sexually violent harm in the mind of an objective person who knows of Pasley's history and mental condition.

Here, Pasley was incarcerated on the day that the State filed its petition. Whether the State had to prove an ROA depended on whether he was incarcerated for a sexually violent offense or conduct that qualifies as an ROA.[5]

---

[5] In this case, the court ruled pretrial that the State was required to prove beyond a reasonable doubt that Pasley's conviction for assault in the third degree—negligence constituted an ROA. This is the subject of the State's cross appeal, which we do not address here.

At trial, the court found that the State had satisfied its burden in showing that Pasley's acts underlying his conviction created a reasonable apprehension of sexually violent harm in the mind of an objective person who knows of Pasley's history and mental condition. The court based this determination on the testimony from four State witnesses, two defense witnesses, and various conviction documents. This evidence highlighted the similarities between the assault of K.R. and Pasley's past offenses, which in turn supports the conclusion that it was nonconsensual. Those similarities include the power and authority Pasley exerted over his victims, K.R.'s youthful appearance and demeanor, the groping and masturbation of his victims, and more. The credibility of this evidence is not reviewed by this court. *Cardenas-Flores*, 189 Wn.2d at 266. This evidence is sufficient.

Pasley cites *Anderson* and *Froats* to support his argument that the evidence was insufficient to establish he committed an ROA. Pasley asserts that in those cases, the State proved beyond a reasonable doubt that the sexual activity in question was nonconsensual, but in this case, the State admitted that K.R. may be able to consent to sexual contact. Therefore, according to Pasley, because the State provided no substantive evidence of a nonconsensual sexual encounter with K.R., the evidence is insufficient to prove an ROA.

Pasley's assertions regarding consent are misplaced. While the circumstances surrounding the incidents with K.R. could support differing conclusions as to consent, consent is not the crux in this case, nor was it the crux of the analysis in *Anderson* and *Froats*. *See* 166 Wn.2d at 550; 134 Wn. App. at 435-36. Rather, the real issue in determining whether Pasley committed an ROA is whether an objective observer who knows of Pasley's history and mental condition could find that Pasley's behavior with K.R. creates a reasonable apprehension of sexually violent harm, consent notwithstanding.

Consent is unrelated to the ROA inquiry in the case before us. Likewise, consent was immaterial to the ROA conclusion in *Anderson* and *Froats*. *See* 166 Wn.2d at 550; 134 Wn. App. at 435-36. Those cases turned on the fact of vulnerable adults serving as substitutes for the perpetrators' preferred victims: children. *See Anderson*, 166 Wn.2d at 550; *Froats*, 134 Wn. App. at 435-36. The courts in *Anderson* and *Froats* upheld the ROA findings because, in both cases, the defendants were repeating a concerning pattern reminiscent of their past offenses. It was this repetition of a concerning pattern reminiscent of past offenses, not consent per se, that was the focus of the court's conclusion.

In fact, the circumstances in this case are analogous to *Anderson* and *Froats*. Dr. Fox in effect described K.R. as a substitute victim, stating that Pasley's behavior with K.R. and K.R.'s status as a male who looked young and who had cognitive limitations "were consistent . . . with the pattern of behavior with the other victims." 1 RP at 107. Dr. Fox also provided extensive testimony about Pasley's mental condition. Dr. Fox testified that based on Pasley's sexual assault of others, Pasley suffers from other specified paraphilic disorder, and that Pasley's sexual conduct with K.R. supports the paraphilic disorder diagnosis because K.R. appeared much younger than his chronological age and had cognitive limitations. Dr. Fox identified parallels among Pasley's past offenses and K.R., noting "[e]ach of the victims were similar in that they were soft spoken, shy, particularly vulnerable, and had the absence of a father figure and were scared." 1 RP at 132.

Many similarities exist between Pasley's assault of K.R. and his past victims, but the ROA behavior need not be identical to past offending behavior to qualify as an ROA. Similar to the defendant in *Marshall* who had a history of offending against young girls and whose ROA victim was a disabled adult woman, Pasley's past victims were minor boys while his ROA victim was a cognitively delayed adult man. 156 Wn.2d at 153-54. And, similar to the defendant in *McNutt*,

14

whose ROA offense involved the same type of predatory behavior with a minor female victim as his past behavior with minor male victims, here the incidents with K.R. reflected the same type of predatory behavior as with Pasley's past victims. 124 Wn. App. at 351.

Taking the evidence in the light most favorable to the State, an objective person who knows of Pasley's history and mental condition as described above could recognize the similarities among the sexual acts Pasley perpetrated against his victims and the parallels among the victims' profiles. The State presented sufficient evidence of Pasley's history and mental condition, such that a rational trier of fact could find that Pasley's behavior with K.R. creates a reasonable apprehension of sexually violent harm and thereby constitutes an ROA. We will not disturb the trial courts findings on this record.

II.     EXCLUSION OF EVIDENCE

Pasley argues that the trial court erred by excluding the portion of his deposition transcript wherein he recounted K.R.'s statement that their sexual encounter was "cool," even though K.R. had a girlfriend. Br. of Appellant at 35. Pasley argues that this question and answer was not offered for its truth, but rather to show its effect on him as the listener. We hold that Pasley was not prejudiced by the exclusion of this portion of his deposition. Therefore, even if we assume without deciding that the statement was improperly excluded, the error does not merit reversal.

A.     Pasley Was Not Prejudiced by the Statement's Exclusion

An erroneous evidentiary ruling does not result in reversal unless the defendant was prejudiced. *State v. Thomas*, 150 Wn.2d 821, 871, 83 P.3d 970 (2004). For evidentiary errors not implicating a constitutional mandate, reversal is only proper if, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred. *Id.*

15

56944-2-II

Here, even if the exclusion was improper, it did not prejudice Pasley because the excluded statement was of minor significance in comparison to the other evidence presented and considered at trial. Specifically, the expert testimony was highly influential in the trial court's decision. The trial court considered the differences between Dr. Fox's and Dr. Abbott's testimony, and concluded that, consistent with Dr. Fox's testimony, Pasley met the criteria of an SVP. The trial court noted that "although Dr. Abbott testified credibly, the court believes that Dr. Abbott overstated the value of Mr. Pasley's treatment because of the history of re-offense after treatment." 2 RP at 758. Admission of the excluded evidence is unlikely to have affected these determinations to the extent that the outcome of the trial would have been different.

The trial court also noted in its oral ruling that Pasley stated in his guilty plea that he touched K.R. in an "offensive manner," he admitted to multiple sex offenses, and the fact that "[h]is testimony did not show remorse but seemingly utilized words and phrases from treatment programs. [His] description of the incident with [K.R.] was not indicative of successful treatment." 2 RP at 754. This also rebuts Pasley's claim of prejudice, because the excluded testimony would not have affected the trial court's determination as to these aspects.

In sum, had the trial court considered the excluded excerpt, it likely would have reached the same conclusion. Thus, there is no substantial likelihood that the trial court would have reached a different conclusion regarding the ROA had the disputed deposition excerpt been admitted. We hold that because Pasley was not prejudiced by this evidentiary error, it does not merit reversal.

III.    INEFFECTIVE ASSISTANCE OF COUNSEL

Pasley argues that defense counsel was ineffective for failing to re-raise the hearsay issue before the deposition was admitted into evidence. We disagree. For the same reason there was no

16

56944-2-II

prejudice from any evidentiary error, Pasley fails to show sufficient prejudice to warrant a finding

of ineffective assistance based on the failure to re-raise.

CONCLUSION

For the aforementioned reasons, we affirm the trial court's order of commitment.

_____

Veljacic, J.

We concur:

_____

Lee, J.

_____

Glasgow, C.J.