IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Detention of<br><br>F.L. | No. 87128-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, C.J. — F.L. appeals from an order committing him to 14 days of involuntary mental health treatment. He contends that the evidence presented was insufficient to support the court's findings that he presented a likelihood of serious harm to others and was gravely disabled. We disagree and affirm.

## FACTS

On August 2, 2024, the Shoreline Police Department responded to a call that F.L. was outside his parent's house in violation of a no contact order issued in June 2024 that specifically prohibited contact with his step-mother, Eileen.[1] Officers found F.L. sitting on a bench in the backyard and arrested him.

Following his arrest, F.L. was evaluated while being held at the South Correctional Entity Regional Jail, after which a designated crisis responder (DCR) filed a petition for initial detention pursuant to the involuntary treatment act (ITA).[2] The petition alleged that F.L. "presented an imminent likelihood of serious harm

---

[1] F.L. and his parents share the same last name. As such, we refer to the parents by their first names in the interest of privacy and clarity. No disrespect is intended.

[2] Ch. 71.05 RCW.

to others" as defined by RCW 71.05.020(37)(a) and he was "in imminent danger due to grave disability" pursuant to the definitions set out in RCW 71.05.020(25)(a) and (b). The petition requested that F.L. be detained at an evaluation and treatment facility for "inpatient psychiatric treatment for safety and stabilization."

F.L. was admitted to Fairfax Hospital for treatment. Fred Schwartz, a licensed mental health counselor and evaluator for Fairfax, filed a petition for 14 days of involuntary treatment on behalf of the hospital. Schwartz identified that F.L. had a "profound history of 9 [involuntary commitments under the ITA], 2 revocations, and 17 other hospitalizations." He further observed that while in the hospital, F.L. continued "to be guarded, exhibit a flat, detached affect, be internally preoccupied, and not attend group therapy." Schwarz also reported that F.L. had caused property damage in the hospital, "including drawing on the wall and blocking his toilet."

On August 20, 2024, the court conducted a probable cause hearing on the petition. In support of the petition, the State called Eileen, F.L.'s father Donald, and Schwartz to testify. Donald testified that F.L. had foregone medication for the past three years, had become almost nonverbal during that time and engaged in a variety of behaviors that caused Donald to be concerned about his son's wellbeing. Critically, he also stated that he was concerned for the couple's safety due to the repeated violations of the no contact order and F.L.'s increased exhibition of extreme anger. Eileen described the incident that caused her to seek a no contact order and explained that she was afraid of F.L. for similar reasons

as Donald. The State admitted F.L.'s diagnostic and treatment history through Schwartz, who testified to F.L.'s symptoms and behavior at Fairfax, some of which had already been described in the petition. Schwartz opined that F.L. has a "mental health disorder" of "unspecified schizophrenia" and noted that F.L.'s symptoms included "delusions, hallucinations," being "easily dysregulated," denial of the existence of his own disorder, having impaired insight and judgment about his condition, and unwillingness to participate in treatment.

The court found Donald, Eileen, and Schwartz were credible witnesses. It also found that the State had proved by a preponderance of the evidence all three statutory bases presented in the petition and specifically noted the evidence on which it had relied for each finding. It further found that less restrictive alternative treatment was not in F.L.'s best interest and concluded that he was subject to commitment for up to 14 days of involuntary treatment because of the likelihood of serious harm to others and due to grave disability.

F.L. timely appealed.

ANALYSIS

As a threshold matter, F.L.'s avers that although the 14-day commitment has concluded, his appeal is not moot because "he still faces collateral consequences from the commitment order." We agree and reach the merits.[3]

_____

[3] The State, appropriately, does not challenge F.L.'s appeal on the basis of mootness.

I.      Sufficiency of the Evidence

F.L. asserts that the trial court erred when it entered a 14-day commitment order because there was insufficient evidence to support the findings that he presents a likelihood of serious harm to others and that he is gravely disabled because of both his inability to provide for his basic human needs and his behavior manifests severe deterioration in routine functioning.  Each of these individual statutory bases may separately support the court's ultimate decision on commitment.  *See In re Det. of K.P.*, 32 Wn. App. 2d 214, 221-22, 555 P.3d 480 (2024).  As such, if any one of the three bases found by the court is supported by substantial evidence, we may affirm.  *Id.*

Our review of a challenge to the sufficiency of the evidence underlying the trial court's commitment order "is limited to determining whether substantial evidence supports the findings and, if so, whether the findings in turn support the trial court's conclusions of law and judgment."  *In re Det. of LaBelle*, 107 Wn.2d 196, 209, 728 P.2d 138 (1986).  "Substantial evidence 'is evidence that is in sufficient quantum to persuade a fair-minded person of the truth of the declared premise."  *In re Det. of T.C.*, 11 Wn. App. 2d 51, 56, 450 P.3d 1230 (2019) (internal quotation marks omitted) (quoting *In re Det. of A.S.*, 91 Wn. App. 146, 162, 955 P.2d 836 (1998), *aff'd*, 138 Wn.2d 898, 982 P.2d 1156 (1999)).  "The party challenging a finding of fact bears the burden of demonstrating the finding is not supported by substantial evidence."  *A.S.*, 91 Wn. App. at 162.  We will not disturb the trial court's assessment of witness credibility or the strength of the evidence.  *In re Det. of A.F.*, 20 Wn. App. 2d 115, 125, 498 P.3d 1006 (2021).

F.L. first contends that the State did not offer sufficient evidence to support the court's findings underpinning its conclusion that he presented a likelihood of serious harm to others. He avers that the State failed to provide a "recent overt act to support the conclusion that [F.L.] was a substantial danger to anyone" because "[e]xpressions of subjective fear are inadequate when they are not tethered to an objective, reasonable fear of substantial risk of physical harm."

The ITA provides that

> at the conclusion of the probable cause hearing, if the court finds by a preponderance of the evidence that a person detained for behavioral health treatment, as the result of a behavioral health disorder, presents a likelihood of serious harm, or is gravely disabled, and, after considering less restrictive alternatives to involuntary detention and treatment, finds that no such alternatives are in the best interests of such person or others, the court shall order that such person be detained for involuntary treatment not to exceed 14 days in a facility licensed or certified to provide treatment by the department or under RCW 71.05.745.

RCW 71.05.240(4)(a). In RCW 71.05.020(37), the legislature defined "[l]ikelihood of serious harm" as:

> (a) A substantial risk that: (i) Physical harm will be inflicted by a person upon [their] own person, as evidenced by threats or attempts to commit suicide or inflict physical harm on oneself; (ii) *physical harm will be inflicted by a person upon another, as evidenced by behavior which has caused such harm or which places another person or persons in reasonable fear of sustaining such harm*; or (iii) physical harm will be inflicted by a person upon the property of others, as evidenced by behavior which has caused substantial loss or damage to the property of others; or
> (b) The person has threatened the physical safety of another and has a history of one or more violent acts.

(Emphasis added.) We have previously interpreted "reasonable fear of sustaining such harm" as requiring "that the person[] threatened be in fear, that they must be in fear of harm to themselves, and that the harm they are fearful of must be in the

nature of the harm threatened." *In re Det. of D.V.*, 200 Wn. App. 904, 907, 403 P.3d 941 (2017). The ITA further instructs the trial court that

> (3) In making a determination of whether there is a likelihood of serious harm in a hearing conducted under RCW 71.05.240 or 71.05.320, the court shall give great weight to any evidence before the court regarding whether the person has: (a) A recent history of one or more violent acts; or (b) a recent history of one or more commitments under this chapter or its equivalent provisions under the laws of another state which were based on a likelihood of serious harm. The existence of prior violent acts or commitments under this chapter or its equivalent shall not be the sole basis for determining whether a person presents a likelihood of serious harm.
>       For the purposes of this subsection "recent" refers to the period of time not exceeding three years prior to the current hearing.

RCW 71.05.245.

Here, the trial court concluded that F.L. created "a substantial risk" of "physical harm . . . evidenced by behavior which has caused such harm or which places another person or persons in reasonable fear of sustaining such harm." The trial court's conclusion was premised on the findings it made in reliance on Donald and Eileen's testimony about their past confrontations with F.L. beginning in May 2024, the basis for the no contact order, through the date of F.L.'s arrest in August, in addition to Schwartz' testimony regarding hospital records that described F.L.'s behavior during his initial commitment at Fairfax following his August arrest.

Eileen and Donald both testified they were scared to leave their home when F.L. was not in jail or treatment and that F.L. had repeatedly violated the no contact order intended to prohibit his contact with Eileen. Eileen testified that the basis of the no contact order issued in June 2024 was that F.L. had charged at her, running with clenched fists, in May of that year. She also testified that she

does not "garden when he's out of jail" and does not "do anything outside unless there's a whole bunch of neighbors outside where I would feel comfortable." She further testified that she doesn't take walks, watches "continuously just to walk from the house to the car" and looks outside before she leaves. Schwartz testified to an incident during F.L.'s initial detention at Fairfax, when he was in a "very agitated . . . dysregulated state. His eyes were bulging. He was screaming and yelling, slamming the door." It required the efforts of several staff "to redirect him," which still proved "difficult." Schwartz explained that F.L. "appeared aggressive and quite honestly, scary" during the outburst, which had occurred the day of the hearing, although Schwartz also observed that F.L. eventually gained "enough composure" to attend the proceedings.

F.L. nevertheless avers the court did not apply the correct standard because there was no evidence of a "recent overt act," as required under *In re Detention of Harris*, 98 Wn.2d 276, 284, 654 P.2d 109 (1982), and the court based its findings on his "elderly stepmother's subjective fear," instead of applying an objective standard as required by law. However, F.L. relies solely on Justice Sanders' nonbinding dissent in *In re Detention of Anderson* to support this contention. 166 Wn.2d 543, 556-57, 211 P.3d 994 (2009) (Sanders J., dissenting).[4] Contrary to F.L.'s assertion, the controlling statute and corresponding interpretive authority do not require that the fear be objective, only

---

[4] F.L. specifically offers Justice Sanders' statement that the "purpose of the recent overt act requirement is to add objectivity to an otherwise subjective determination of mental illness and dangerousness." *Anderson*, 166 Wn.2d at 556-57 (Sanders, J., dissenting) (citing *Harris*, 98 Wn.2d at 284). However, even if this was binding precedent, it does not state that fears must be objective, instead that the purpose of the *Harris* interpretation of the recent overt act requirement was to add objectivity, meaning that reasonable fears will be grounded in the actions of the respondent.

that the apprehension of harm is reasonable. The State appropriately responds that the ITA defines "likelihood of serious harm" as "a substantial risk that . . . physical harm will be inflicted by a person upon another, *as evidenced by behavior which has caused such harm or which places another person or persons in reasonable fear of sustaining such harm*." RCW 71.05.020(37)(a)(ii) (emphasis added).

The court expressly found Eileen and Donald's testimony was credible and each voiced reasonable fears of harm; Donald described his fear that F.L. would harm Eileen and conduct that caused concern for his own safety like F.L. growling at him, while Eileen explained her concern for her safety and the ways that her fear caused her to modify her conduct to protect herself and her grandchildren. The couple told the court that F.L. had repeatedly violated the no contact order, which made them frightened of leaving their home or even spending time in the yard. We defer to the trial court's assessment of witness credibility. *A.F.*, 20 Wn. App. at 125. Further, while the incident when F.L. charged at Eileen in the yard occurred roughly three months before the hearing on the 14-day petition, both Donald and Eileen testified to F.L.'s repeated violations of the no contact order, no less than four times in a span of approximately two months, including the incident that resulted in his arrest two weeks prior to the hearing. The record does not support F.L.'s contention on appeal that the court relied solely on the May incident in reaching its ruling on involuntary commitment. Moreover, all of these incidents occurred within the three-year time frame established in RCW 71.05.245.

Though Donald and Eileen's testimony was sufficient to support the trial court's finding that F.L. presented a substantial risk of harm to them, the court also relied on Schwartz' testimony about descriptions in the treatment records of F.L.'s conduct and presentation during his hospitalization at Fairfax. Specifically, Schwartz testified to F.L.'s outburst that he had observed the day of the hearing. This is a separate and even more recent act, providing a further basis for the trial court to find that F.L. presented a substantial risk of harm to others.

The challenged finding as to Donald and Eileen's fears is supported by substantial evidence consisting of their testimony and corroborated by Schwartz', all of which the trial court found to be credible. Further, all of the incidents relied on occurred well within the statutory timeframe such that they were properly considered recent overt acts. Therefore, the court did not err when it found that F.L. recently posed a substantial risk of physical harm to others through the creation of a reasonable fear of harm, which in turn supports its conclusion that F.L. presented a likelihood of serious harm to others.[5]

Affirmed.

WE CONCUR:

_____

_____ Birk, J.

_____ Coburn, J.

---

[5] Because we conclude that the 14-day commitment order was properly entered based on the court's finding that the State proved by a preponderance of the evidence that F.L. presented a likelihood of serious harm, and because that is an independent basis to affirm the order on review, we need not reach his sufficiency challenges to the alternate bases for the court's separate findings regarding grave disability.